**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

BERNADETTE L. PARKS,     )     No.  CV 12-797 AGR

         Plaintiff,   )

               )     MEMORANDUM OPINION AND ORDER

     v.            )

MICHAEL A. ASTRUE,     )
Commissioner of Social Security,  )

         Defendant.   )
_____)

     Plaintiff Bernadette L. Parks filed a complaint on May 24, 2012.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on June 21 and July 13, 2012.  (Dkt. Nos. 8, 9.)  The parties filed a Joint Stipulation ("JS") on January 3, 2013, that addressed the disputed issues.  The commissioner filed the certified administrative record ("AR").  The court has taken the Joint Stipulation under submission without oral argument.

     Having reviewed the entire file, the court affirms the decision of the Commissioner.

///

///

///

# I.

## PROCEDURAL BACKGROUND

On July 31, 2007, Parks filed an application for supplemental security income benefits alleging an onset date of December 1, 2005.  AR 32.  The application was denied initially and on reconsideration.  AR 133-34.  Parks requested a hearing.  On June 1, 2009, an Administrative Law Judge ("ALJ") conducted a hearing at which Parks and a vocational expert testified.  AR 105-31.  On August 12, 2009, the ALJ issued a decision denying benefits.  AR 135-48.  On October 4, 2010, the Appeals Council granted the request for review, vacated the decision remanded the case for further proceedings.  AR 149-53.  On remand, the ALJ was directed to (1) evaluate whether Parks' schizoaffective disorder, depression and bipolar disorder are medically determinable impairments and, if so, whether they are severe; (2) assess Parks' residual functional capacity and, in so doing, evaluate and develop the record concerning the treating source opinions; (3) obtain evidence from a mental health medical expert including, if appropriate, whether drug and/or alcohol addiction is material to a finding of disability; (4) evaluate whether Parks' past relevant work was performed at the substantial gainful activity level and, if so, whether Parks can perform it; (5) obtain supplemental evidence from a vocational expert if warranted; and (6) if appropriate, evaluate whether drug and/or alcohol addiction is material to disability.  AR 151-53.

On January 31, 2011, an ALJ conducted a hearing at which Parks, a medical expert and vocational expert testified.  AR 51-104.  On February 15, 2011, the ALJ issued a decision denying benefits.  AR 29-45.  On April 6, 2012, the Appeals Council denied the request for review.  AR 1-5.  This lawsuit followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not

1  supported by substantial evidence or it is based upon the application of improper legal
2  standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*,
3  966 F.2d 1255, 1257 (9th Cir. 1992).

4          In this context, "substantial evidence" means "more than a mere scintilla but less
5  than a preponderance – it is such relevant evidence that a reasonable mind might
6  accept as adequate to support the conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591
7  (9th Cir. 2009); *Moncada*, 60 F.3d at 523; *see also Ryan v. Comm'r of Soc. Sec.*, 528
8  F.3d 1194, 1198 (9th Cir. 2008).  When determining whether substantial evidence exists
9  to support the Commissioner's decision, the Court examines the administrative record
10 as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at
11 1257.  Where the evidence is susceptible to more than one rational interpretation, the
12 Court must defer to the decision of the Commissioner. *Moncada*, 60 F.3d at 523.

III.

## EVALUATION OF DISABILITY

### A.    Disability

16         A person qualifies as disabled and is eligible for benefits, "only if his physical or
17 mental impairment or impairments are of such severity that he is not only unable to do
18 his previous work but cannot, considering his age, education, and work experience,
19 engage in any other kind of substantial gainful work which exists in the national
20 economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333
21 (2003).

### B.    The ALJ's Findings

23         The ALJ found that Parks has the following medically determinable severe
24 impairments: psychotic disorder, not otherwise specified ("NOS"), mood disorder, NOS,
25 and drug and alcohol abuse.  AR 36.  Parks' impairments meet listings 12.03, 12.04,
26 and 12.09. *Id.*

27         The ALJ further found that if Parks stopped the substance abuse, she would
28 continue to have the severe impairments of psychotic disorder NOS and mood disorder

3

1   NOS, but would not meet or equal a listing.  *Id.*  She would have the residual functional
2   capacity ("RFC") to perform a full range of work at all exertional levels but with the
3   following nonexertional limitations: she "would be limited to simple, repetitive tasks with
4   no interaction with the public; she could have only non-intense interaction with co-
5   workers and supervisors; she could not perform tasks requiring hypervigilance; she
6   could not perform fast-paced work; and she could not be responsible for the safety of
7   others."  AR 37.  She would be able to perform past relevant work as a chicken bagger
8   as actually and generally performed.  AR 44.  Parks' substance abuse disorders are
9   contributing factors material to the determination of disability.  *Id.*

10          **C.      Mental Impairments in the Absence of Substance Abuse**

11          "An individual shall not be considered to be disabled . . . if alcoholism or drug
12   addiction would . . . be a contributing factor material to the Commissioner's
13   determination that the individual is disabled."  42 U.S.C. § 423(d)(2)(C).  The purpose of
14   the statute was "to discourage alcohol and drug abuse, or at least not to encourage it
15   with a permanent government subsidy."  *Ball v. Massanari*, 254 F.3d 817, 824 (9th Cir.
16   2001).

17          In *Parra v. Astrue*, 481 F.3d 742 (9th Cir. 2007), the Ninth Circuit described the
18   implementing regulations as requiring the ALJ to "conduct a drug abuse and alcoholism
19   analysis ('DAA Analysis') by determining which of the claimant's disabling limitations
20   would remain if the claimant stopped using drugs or alcohol."  *Parra*, 481 F.3d at 747
21   (citing 20 C.F.R. §§ 404.1535(b)).  "If the remaining limitations would still be disabling,
22   then the claimant's drug addiction or alcoholism is not a contributing factor material to
23   his disability.  If the remaining limitations would not be disabling, then the claimant's
24   substance abuse is material and benefits must be denied."  *Id.*

25          The ALJ found that Parks' impairments, including substance abuse disorders,
26   met a listing.  AR 36.  However, the ALJ found that if she stopped the substance abuse,
27   she would have the RFC to perform a full range of work at all exertional levels but with

28

the nonexertional limitations described above.  AR 37.  The ALJ adopted the opinion of the medical expert.  AR 38.

"[T]he claimant bears the burden of proving that drug or alcohol addiction is not a contributing factor material to his disability."  *Parra*, 481 F.3d at 748.  The Ninth Circuit rejected the argument that inconclusive evidence was sufficient to satisfy the claimant's burden because that "effectively shifts the burden to the Commissioner to prove materiality."[1]  *Id.* at 749.  The Ninth Circuit concluded that the claimant "bore the burden of proving that his alcoholism was not a contributing factor material to his cirrhosis-related disability."  *Id.* at 750.

The record contains Parks' mental health history.  Parks was found to be a danger to herself after a suicide attempt in March 2005.  AR 438.  After being released on parole in November 2006 (AR 484),[2] Parks was hospitalized from December 12 to 18, 2006 on a 5150 hold[3] after attempting suicide by overdose.  AR 401.  Parks had stopped taking Lithium three months earlier and began experiencing auditory hallucinations telling her to harm herself.  AR 402.  Parks was diagnosed with schizoaffective disorder, bipolar type and amphetamine abuse.  AR 406.  Substance

---

[1]  "An alcoholic claimant who presents inconclusive evidence of materiality has no incentive to stop drinking, because abstinence may resolve his disabling limitations and cause his claim to be rejected or his benefits terminated.  His claim would be guaranteed only as long as his substance abuse continues – a scheme that effectively subsidizes substance abuse in contravention of the statute's purpose."  *Parra*, 481 F.3d at 750.

[2]  In November 2006, while incarcerated, Parks was diagnosed with amphetamine induced psychotic disorder and amphetamine dependence, with a Global Assessment of Functioning ("GAF") of 55.  AR 485, 487-88.  She was observed to have a pervasive feeling of sadness, despair and helplessness.  AR 490.  Parks apparently had been incarcerated since June 2006.  AR 521-26.

[3]  "When any person, as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled, [designated persons] may, upon probable cause, take, or cause to be taken, the person into custody and place him or her in a facility designated by the county and approved by the State Department of Social Services as a facility for 72-hour treatment and evaluation."  Cal. Welf. & Inst. Code § 5150.

1    abuse was noted as being current.  AR 402.  Her GAF was 30.  AR 407.  Parks was

2    discharged with a recommendation that she take Abilify.  AR 401.  On December 27,

3    2006, Parks had lost her Abilify and was starting to hear voices.  She did not want SSI

4    because she would rather work but had to find someplace to live to obtain a job.  AR

5    412.

6          During the period February to March 2007, Parks was doing well on medications

7    and reported she was working as a telemarketer.  AR 412.  However, Parks was

8    hospitalized from April 2 to 10, 2007 and diagnosed with psychotic disorder, NOS,

9    alcohol abuse and methamphetamine abuse.  AR 379-80.  She relapsed with alcohol

10   and amphetamines, and complained of hearing voices and having thoughts of harming

11   herself.  AR 382, 384.  Her GAF at admission was 40 and at discharge was 66.  AR

12   379, 387.

13         On April 27, 2007, Parks' mental health was evaluated by the California

14   Department of Corrections.  AR 478.  She reported a history of 5150 holds, suicide

15   attempts and methamphetamine abuse.  *Id.*  Her affect was angry, frustrated and sad.

16   AR 479.  Her cognition and judgment were within normal limits.  *Id.*  She was diagnosed

17   with bipolar I and methamphetamine dependence, with a GAF of 55.  AR 480.  The

18   psychologist assessed that Parks needed medications to help her functioning.  *Id.*  In

19   June 2007, Parks reported the medications were helping and she was not having

20   negative side effects.  AR 469.  In July 2007, Parks reported hearing voices telling her

21   to hurt herself.  She appeared depressed but not anxious, and was diagnosed with

22   altered thought processes.  AR 466.  She was treated in the EOP (Enhanced Outpatient

23   Program), and step down monitoring records indicated minimal risk of suicide and no

24   symptomology by July 20, 2007.  AR 463.

25         On November 7, 2007, Dr. Benson at the parole outpatient clinic opined that

26   Parks was "psychiatrically disabled" and slated to be discharged from parole on

27   November 25, 2007.  AR 440.  Parks was on celexa and seroquel.  AR 441.  She was

28

diagnosed with bipolar disorder and amphetamine dependence, with a GAF of 55.  AR 442.

Dr. Smith, a board eligible psychiatrist, conducted a psychiatric evaluation of Parks on October 29, 2007.  AR 415-23.  Parks complained of being suicidal, depressed, bipolar and paranoid.  Dr. Smith noted her complaints were "not consistent with her records."  AR 415.  Dr. Smith had Parks' parole outpatient notes, which apparently did not contain information about her hospitalizations.  AR 415; *see* AR 412-14.  Dr. Smith noted Parks smiled and laughed during the mental status examination, and did not appear impaired in her ability to work if she abstained from substance abuse.  AR 422.

On April 10, 2008, Parks was seen in the emergency room on a 5150 hold for suicidal ideation after an overdose of seroquel and celexa to stop the voices in her head.  AR 539-40.  A mental status examination on April 11 indicated Parks was guarded, hostile and resistive, and her memory was impaired.  Her mood was labile and her thoughts were tangential.  She was very paranoid and had auditory hallucinations.  She was at risk of injuring herself.  AR 449.  She was unable to understand the seriousness of her illness or need for treatment.  AR 450.

Parks was hospitalized on a 5150 hold from May 27 to 30, 2008.  AR 451-60.  She was diagnosed with major depressive disorder with psychotic features and amphetamine abuse.  AR 451.  Her GAF was 20 at admission and 55 at discharge.  *Id.* Parks had been beaten up by her boyfriend and became suicidal with thoughts of running into traffic.  *Id.*  She remained depressed through the hospitalization and was discharged with seroquel, wellbutrin and zyprexa.  AR 451, 458-59.  The notes indicate "one drink tonight" and "methamphetamine."  AR 459-60.

On August 25, 2008, a psychiatrist at the Hemet Mental Health Clinic filled out a verification of mental disability.  He opined Parks was mentally unfit for gainful employment due to schizoaffective disorder.  AR 443.

In January 2009, Dr. Rodriguez at the Riverside County Department of Mental Health diagnosed Parks with schizoaffective disorder and a GAF of 40.  AR 547.  She had hallucinations, depressed mood and loss of energy.  AR 548.  She drank alcohol daily.  AR 549.  In March 2009, Parks still felt depressed and nothing was working.  AR 544.  Her mood was depressed and her affect was flat.  *Id.*  In April 2009, Dr. Rodriguez noted Parks had some suicidal thoughts but no plans and she was stable.  AR 543.  Her appearance, mood and affect were appropriate.  *Id.*  She was drinking in the morning.  *Id.*

On April 22, 2009, Dr. Rodriguez opined that Parks was unable to engage in gainful employment due to schizoaffective disorder, paranoid type, with symptoms of psychosis, auditory hallucinations and paranoia.  AR 444.  Based on a referral from Hemet Mental Health Clinic, Parks was participating in a Full Service Partnership Program that provides support in recovery.  *Id.*  In May 2009, Parks was very depressed.  AR 542, 586.  In July 2009, Parks reported using meth three days earlier and Dr. Rodriguez appears to have referred her to a drug program.  AR 585.

In August 2009, a non-physician stated Parks suffered from schizoaffective disorder, depressed.  AR 552.  Parks had a severe limitation in her ability to complete a normal workday without interruptions from psychologically based symptoms; marked limitations in her ability to maintain attention for two hours and accept instructions from supervisors; and moderate limitations in her ability to remember work-like procedures, understand and carry out simple instructions, maintain regular attendance, and get along with co-workers.  AR 552-53.  The term "severe" was defined as "[n]o useful ability to function", the term "marked" as having a seriously limited ability to function, and the term "moderate" as a significantly limited ability to function such that deficiencies could not be ignored by a supervisor or co-worker.  AR 554.

On August 21, 2009, Dr. Dia found Parks to be irritable and agitated, and her speech was rambling.  AR 584.  Parks complained of hearing voices and refused a tox screen.  *Id.*

As of September 21, 2009, Parks claimed two months of sobriety from meth. AR 583. In December 2009, Dr. Dia, a psychiatrist, found Parks to be intellectually intact, but her concentration was disrupted by racing and tangential thoughts. AR 556. Her mood was depressed and she exhibited psychomotor agitation. *Id.* She had good activities of daily living, and, when she was compliant with medications, she had problems with more than two-step instructions. AR 557. She had low stress tolerance due to affective instability. *Id.* Dr. Dia diagnosed schizoaffective disorder, depressed type. AR 558. Dr. Dia assessed that Parks is currently stable on medications, but that auditory hallucinations, paranoia and depression come and go depending on events and circumstances. *Id.* "Long term improvement beyond present fragile stability is doubtful." *Id.* His progress notes on that date indicated Parks was manipulative and evasive. AR 578.

On January 22, 2010, Parks reported a relapse on meth one month earlier and had occasional auditory hallucinations.[4] AR 574. On April 6, 2010, Parks was doing "reasonably well" with occasional auditory hallucinations. Her drug screen was negative and she was doing janitorial work two hours per day. AR 570. On May 12, 2010, Parks reported doing well on her medications and doing janitorial work six hours per week. AR 568. Her drug screen was negative and her housing application was completed. *Id.*

On October 6, 2010, Parks was diagnosed with schizoaffective disorder by history, amphetamine abuse in early remission and alcohol abuse in early remission. Her GAF was 65, with her highest GAF in the past year being 48. AR 607. She was noted to have a long history of mood instability, audiovisual hallucinations and paranoid delusions when on drugs. AR 608. As of that date, she was doing reasonably well without any psychotic symptoms. *Id.* As of November 3, 2010, Parks remained symptom free and was performing janitorial work 8-12 hours per week as part of vocational rehabilitation at Anka Behavioral Health. AR 598.

[4] On February 3, 2010, Parks' drug screen was positive for amphetamine. AR 573.

9

1    Parks has not met her burden of showing her alcohol or substance abuse was not

2    a contributing factor material to her disability.  *Parra*, 483 F.3d at 750.  The ALJ

3    discounted Dr. Rodriguez's letter dated April 22, 2009, in which he opined that Parks

4    was unable to maintain gainful employment due to mental illness.  AR 42, 444.  The

5    letter states that Parks has schizoaffective disorder, paranoid type, with major

6    depressive episodes, psychotic symptoms, auditory hallucinations and paranoia.  AR

7    444.  The ALJ found that the letter failed to mention the effects of Parks' alcohol and

8    substance abuse on her ability to work; yet the records show her symptoms were

9    "greatly exacerbated" by alcohol and substance abuse.  AR 42.  As the ALJ noted, Dr.

10   Rodriguez's records at the time indicated Parks was actively drinking, including the

11   morning of her visit to him.  AR 543-46.

12       The ALJ also did not give great weight to Dr. Dia's opinion dated December 22,

13   2009.  The ALJ found no indication that Dr. Dia ever treated Parks prior to completing

14   these forms.  AR 43.  However, this error is harmless because the ALJ cited Dr. Dia's

15   initial progress note on August 21, 2009.  AR 40.  There were follow-up visits on

16   September 21, October 27, November 20 and December 22, 2009.  AR 578–80, 583-

17   84.  The ALJ noted that Dr. Dia did not mention Parks' drug and alcohol dependence

18   and the effect on her ability to work, despite his treatment notes.  AR 43, 555-58.  The

19   report states cryptically that auditory hallucinations, paranoia, depression or irritability

20   "come and go, depending on events and circumstances."  AR 558.  On August 21,

21   2009, as the ALJ noted, Parks claimed to have last used meth about one month earlier

22   but refused a tox screen.  AR 584.  On December 22, 2009, Dr. Dia found her

23   manipulative and evasive.  AR 578.  On February 3, 2010, Dr. Dia noted that Parks

24   claimed sobriety but tested positive for amphetamines.  AR 573.

25       The ALJ gave great weight to Dr. Dia's opinion dated October 6, 2010.  AR 43.

26   At that point, Parks was in early remission from both alcohol and amphetamine abuse.

27   AR 607.  Her GAF was 65.  *Id.*  Dr. Dia noted "a long hx of mood instability, A/V

28   hallucinations and paranoid delusions when on drugs."  AR 608.  "Pt has been doing

1  reasonably well, and feeling stable for past 4-5 mo without any psychotic symptoms.

2  However, she reports occasional aggravation.  Eats and sleeps well." *Id.*  Significantly,

3  Dr. Dia did *not* include findings in his previous report that Parks was often unfocused,

4  had problems with two-step instructions, and had low stress tolerance due to affective

5  instability.  *Compare* AR 557.  Absent indication that Dr. Dia continued to find Parks had

6  such impairments in her ability to work during early remission, this court cannot say that

7  the ALJ erred.

8                                                 **IV.**

9                                          **CONCLUSION**

10         IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

11         IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order

12  and the Judgment herein on all parties or their counsel.

15  DATED: February 13, 2013

                                         _____
                                                ALICIA G. ROSENBERG
                                         UNITED STATES MAGISTRATE JUDGE